PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, *Plaintiff-Appellee,* v. INFORMATION SYSTEMS & NETWORKS CORPORATION, *Defendant-Appellant.* | No. 07-1502 |

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:03-cv-00951-AW)

Argued: March 18, 2008

Decided: April 11, 2008

Before Sandra Day O'CONNOR, Associate Justice (Retired),
Supreme Court of the United States, sitting by designation,
WILLIAMS, Chief Judge, and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Associate Justice O'Connor and Chief Judge Williams joined.

---

## COUNSEL

**ARGUED:** Norman Henry Singer, SINGER & ASSOCIATES, P.C., Bethesda, Maryland, for Appellant. Thomas G. Collins,

BUCHANAN, INGERSOLL & ROONEY, P.C., Harrisburg, Pennsylvania, for Appellee. **ON BRIEF:** Stephen Moniak, BUCHANAN, INGERSOLL & ROONEY, P.C., Harrisburg, Pennsylvania, for Appellee.

---

## OPINION

HAMILTON, Senior Circuit Judge:

This appeal presents yet another set of facts upon which we must determine whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*, preempts certain state law claims. More specifically, the sole issue we decide in this appeal is whether ERISA preempts a state law breach of contract claim and an alternatively pled state law unjust enrichment claim brought by a third-party company hired to perform only non-discretionary administrative services, under the self-funded portion of an employee health care benefit plan covered by ERISA, against the sponsor of such plan for reimbursement of $93,999.73 in nondiscretionary payments the third-party company fronted to satisfy self-funded benefit claims, when: (1) the plan administrator, with full discretion to determine whether a claim for self-funded benefits should be paid or denied (and who also served as the sponsor's chief financial officer) expressly acknowledged the debt and recommended to the sponsor's chief executive officer that it should be paid; and (2) resolution of either claim requires no interpretation of the plan terms nor is it in any way dependant upon the plan being governed by ERISA. After careful consideration, we hold that ERISA preempts neither state law claim at issue in this appeal. Accordingly, we affirm the district court's entry of judgment in favor of the third-party company following the grant of the third-party company's motion for summary judgment.

### I.

Effective September 1, 2000, the defendant in this case, Information Systems and Networks Corp. (ISN), established a health care benefit plan for the purpose of providing certain health care benefits

to its covered employees and their dependents (the Plan). The parties agree that the Plan is governed by ERISA.

ISN is the "plan sponsor," as that term is defined by ERISA. 29 U.S.C. § 1002(16)(B) ("The term 'plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer . . . ."). ISN operated the Plan pursuant to the written terms of a summary plan description. The Plan designated ISN's Chief Financial Officer, Charles Bonuccelli (CFO Bonuccelli) as the Plan's "administrator" as that term is defined by ERISA. 29 U.S.C. § 1002(16)(A) ("The term 'administrator' means— (i) the person specifically so designated by the terms of the instrument under which the plan is operated . . . .").

ISN purchased insurance from the plaintiff in this case, Great-West Life and Annuity Insurance Company (Great-West), to cover some benefits under the Plan, for example, accidental death benefits. ISN also contracted separately with Great-West to provide stop-loss coverage for the amount any claims by an employee or dependent exceeded $30,000.00 per month in the aggregate.

Relevant to the preemption issue we decide in the present appeal, in a separate and distinct contractual agreement between ISN and Great-West (the Services Agreement), ISN also hired Great-West to perform certain non-discretionary administrative services under the Plan. Great-West's state law claims against ISN in this case both arise from Great-West's performance of only one of these nondiscretionary administrative services, namely, Great-West's non-discretionary duty to front the payment of claims made by ISN employees and their dependents for self-funded benefits under the Plan. ISN, in turn, agreed to reimburse Great-West for any such payments.

Notably, the Plan stated the following with respect to the roles of the plan administrator (the Plan Administrator) and Great-West with respect to the self-funded portion of the Plan:

*Self-Funded Benefits*

Medical, Prescription Drug, Dental and Vision Benefits

> The Plan Administrator has complete authority to control and manage the Plan. The Plan Administrator has full discretion to determine eligibility, to interpret the Plan and to determine whether a claim should be paid or denied, according to the provisions of the Plan as set forth in this booklet.
>
> The Employer is fully responsible for the self-funded benefits. Great-West processes claims and provides other services to the Employer related to the self-funded benefits. Great-West does not insure or guarantee the self-funded benefits.

(J.A. 84).

Article 4 of the Services Agreement confirms that, at all times, ISN retained the authority to control and manage the Plan:

> [ISN] acknowledges that [it] has authority to control and manage the operation of the Plan. It is expressly agreed that under no circumstances will Great-West be designated as plan administrator or a fiduciary of the Plan. Nothing herein will be deemed to constitute Great-West a party to the Plan or to confer upon Great-West any authority or control respecting management of the Plan, authority or responsibility in connection with administration of the Plan or responsibility for the terms or validity of the Plan.

(J.A. 36).

By letter dated December 28, 2000, ISN notified Great-West of its intention to terminate their contractual relationship effective February 1, 2001. Thereafter, Great-West, pursuant to the Services Agreement, demanded that ISN reimburse it $93,999.73, representing the balance amount of benefit claims Great-West paid out on behalf of ISN under the self-funded portion of the Plan. In the spring of 2002, Great-West's collection representative spoke with CFO Bonuccelli about the outstanding balance. Over the course of an eight-month period, Great-West issued a series of letters, some with supporting documentation and some without, to ISN seeking payment of the outstanding balance.

After reviewing the documentation provided by Great-West as to the self-funded benefit payments at issue, CFO Bonuccelli acknowledged the validity of Great-West's demand for reimbursement of the $93,999.73 and recommended to ISN's President and Chief Executive Officer Roma Malkani (CEO Malkani), on at least two occasions, that ISN satisfy Great-West's demand. But each time, without explanation, CEO Malkani refused to reimburse Great-West, and continues steadfastly to do so. Notably, ISN does not dispute that, pursuant to Great-West's obligations under the Services Agreement, Great-West fronted $93,999.73 on behalf of ISN to satisfy claims for self-funded benefits under the Plan.

With no hope of ISN voluntarily reimbursing it the $93,999.73, on April 2, 2003, Great-West filed the present civil action against ISN in federal court in Maryland, based upon diversity jurisdiction. The complaint alleged two alternative common law causes of action under Maryland law—breach of contract and unjust enrichment. As should be obvious by now, the crux of both causes of action is that ISN owes Great-West $93,999.73 for breach of the Services Agreement. To be clear, Great-West's claims against ISN arose exclusively under the Services Agreement.

ISN moved to dismiss Great-West's complaint under Federal Rule of Civil Procedure 12(b)(6), on the grounds that Great-West's state law breach of contract and unjust enrichment claims were preempted by ERISA, 29 U.S.C. § 1144(a), and that Great-West lacked standing to assert any claims under ERISA's civil enforcement provision, *id.* at § 1132. The district court denied the motion, but noted that ISN would have the opportunity to reassert its ERISA preemption argument in a future motion for summary judgment. ISN then filed its answer to Great-West's complaint, asserting, *inter alia*, ERISA preemption as an affirmative defense to both claims.

Following discovery, the parties filed cross-motions for summary judgment, with ISN's motion asserting ERISA preemption as its sole basis. In fact, in its "OPPOSITION TO PLAINTIFF GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT," filed with the district court, ISN expressly "recognize[d] that the payments made by Plaintiff pursuant to the Health

Plan, if not for ERISA, would be reimbursable if ERISA had not been implicated."

The district court rejected ISN's ERISA preemption argument, denied its motion for summary judgment, and granted summary judgment for $93,999.73 in favor of Great-West with respect to Great-West's breach of contract claim.* This timely appeal by ISN followed.

## II.

As its sole challenge to the judgment below, ISN argues that the district court erred in concluding that ERISA does not preempt either of Great-West's state law claims. As ISN seeks to use ERISA preemption as an affirmative defense to Great-West's state law claims, ISN bears the burden of proving the defense's applicability. *See Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (when defendant uses ERISA preemption as an affirmative defense to plaintiff's state law claims, defendant bears burden of proof that defense applies), *cert. denied*, 127 S. Ct. 1826 (2007). *Cf. Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal preemption is ordinarily a federal defense to the plaintiff's suit."). ISN presents no specific argument in challenge to the district court's ruling on the merit's of Great-West's breach of contract claim. Accordingly, the sole issue presented in this appeal is whether ISN has carried its burden of showing that ERISA preempts Great-West's state law breach of contract claim as well as its alternative and virtually identical state law claim for unjust enrichment.

Our review of this issue on appeal from the grant of summary judgment is *de novo*, construing the evidence in the light most favorable to ISN, the nonmoving party. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). We begin our analysis by setting forth the text of ERISA's preemption clause: "[T]he provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.

---

*Given its ruling with respect to the merits of Great-West's breach of contract claim, the district court expressly did not address the merits of Great-West's alternatively pled unjust enrichment claim.

§ 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

Although the phrase "relates to" has an expansive connotation, ERISA's preemptive scope is not unlimited, for "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (internal quotation marks omitted). Thus, as the Supreme Court has instructed, courts must go "beyond the unhelpful text . . . and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656.

"Considering ERISA's objectives set forth in 29 U.S.C.A. § 1001(b), the Supreme Court has explained that Congress intended ERISA to preempt *at least* three categories of state law: (1) laws that 'mandate[ ] employee benefit structures or their administration'; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) 'laws providing alternate enforcement mechanisms' for employees to obtain ERISA plan benefits." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007) (quoting *Travelers*, 514 U.S. at 658) (alteration in original). "A key feature of these categories of laws is that they implicate the relations among the traditional ERISA plan entities." *Id.* (internal quotation marks omitted). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21. Indeed, the Supreme Court has explained that ERISA does not preempt "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" even though such claims "obviously affect[ ] and involv[e] ERISA plans and their trustees." *Mackey v. Lanier Collection Agency & Svc., Inc.*, 486 U.S. 825, 833 (1988).

With these guiding principles in mind, we now turn to consider whether ERISA preempts Great-West's state law claims for breach of

contract and unjust enrichment. Both claims rest upon the same basic theory of liability; specifically, that ISN is liable to reimburse Great-West for non-discretionary payments totaling $93,999.73 that Great-West fronted on self-funded claims under the Plan.

The following two sentences set forth the crux of ISN's position on appeal. First, Great-West's claims implicate the uniform administrative practice under the Plan because any determination of Great West's state law claims, and the defenses thereto, would determine whether any claims should be paid under the Plan. Second, ISN further argues that any potential claim brought by a participant or beneficiary of the Plan regarding benefits paid or unpaid during the life of the Plan will be impacted by a ruling under state law in this case as to the proper administration of claims under the Plan.

Neither argument bears fruit for ISN. Instead, we agree with Great-West and the district court that Great-West's claims are run-of-the-mill state law claims alleging failure to pay a creditor, *i.e.*, Great-West under the Services Agreement, and thus, are not preempted. The plain and unambiguous terms of the Plan and the Services Agreement make clear that Great-West lacked any discretion in determining whether to pay claims submitted by Plan participants and their beneficiaries for benefits under the self-funded portion of the Plan. Rather, the Plan and the Services Agreement reserved all discretion to deny claims for benefits under the self-funded portion of the Plan to the Plan Administrator, who the parties agree was CFO Bonuccelli. Accordingly, proof that Great-West is deserving of reimbursement under the Services Agreement for the nondiscretionary payment of benefit claims under the self-funded portion of the Plan does not implicate the uniform administration of the Plan as ISN maintains.

The final analysis establishes that Great-West has come forward with undisputed evidence that it paid, on behalf of ISN, $93,999.73 in claims for benefits under the self-funded portion of the Plan, for which amount ISN agreed under the Services Agreement to reimburse Great-West. Of significant evidentiary weight is the deposition testimony of CFO/Plan Administrator Charles Bonuccelli, who had full discretion to determine whether a claim under the self-funded portion of the Plan should be paid or denied, acknowledging that ISN owes Great-West the claimed $93,999.73. Because ISN's payments were

nondiscretionary, and were approved by Bonuccelli, we can reduce this situation to a simple form where the details of the ERISA plan are immaterial: ISN owes a debt to Great-West for a series of loans that Great-West made to ISN. Accordingly, Great-West's alternative claims under Maryland common law: (1) do not mandate employee benefit structures or their administration; (2) do not bind ISN as an employer or plan administrator to particular choices or preclude uniform administrative practice; and (3) do not provide an alternate enforcement mechanism for ISN's employees and their dependants to obtain ERISA plan benefits. Thus, neither claim implicates the three categories of state law that the Supreme Court has long recognized Congress intended to preempt by enacting ERISA.

Furthermore, analysis of Great-West's claims do not require interpretation of the Plan terms nor depend upon the existence of an ERISA plan. Thus, Great-West's claims do not fall within the recognized rule that "[w]hen a cause of action under state law is 'premised on' the existence of an employee benefit plan so that 'in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists,' ERISA preemption will apply." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)) (citation omitted). *See also Tri-State Machine, Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 313-14 (4th Cir. 1994) (employer/sponsor's state-law claims against its ERISA plan's third-party administrator for improper claims processing preempted because they related to an ERISA plan).

Finally, we take a moment to distinguish an unpublished opinion of this court, *Information Systems & Networks Corp. v. Principal Life Ins. Co.*, 2004 WL 1244290 (4th Cir. June 8, 2004), upon which ISN heavily relies in support of its appeal. Before we begin, however, we note that, as an unpublished opinion, *Principal Life* is not binding precedent in our circuit. *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (*en banc*). That being said, in *Principal Life*, ISN brought suit against a third-party administrator of its employer sponsored ERISA plan alleging state law claims of breach of contract and professional negligence. *Principal Life*, 2004 WL 1244290 at *1. The gravamen of ISN's complaint in *Principal Life* was that certain distributions made by the third-party administrator were erroneous because the beneficiaries were not entitled to those distributions under the terms

of the ERISA plan. *Id.* The third-party administrator moved to dismiss under Rule 12(b)(6) on the ground that ERISA preempted ISN's claims. The district court granted the motion, "holding that because ISN's claims essentially asserted 'improper administration of the plan,' they were pre-empted under ERISA." *Id.* We affirmed on the same basis. *Id.* As noted previously, Great-West's claims here are not based upon claims processing errors, but upon its right to reimbursement under the Services Agreement for its nondiscretionary payment of claims under the self-funded portion of the Plan, which claims the Plan Administrator, who has full discretion to determine whether a claim should be paid or denied, has already determined were properly paid. As such, *Principal Life*, is materially inapposite to the case at hand.

To summarize, we hold that ERISA does not preempt a state law breach of contract claim, nor an alternatively pled state law unjust enrichment claim, brought by the third-party company hired to perform only nondiscretionary administrative services, under the self-funded portion of an employee health care benefit plan covered by ERISA, against the sponsor of such plan for reimbursement of $93,999.73 in nondiscretionary payments the third-party company fronted to satisfy self-funded benefit claims, when: (1) the plan administrator, with full discretion to determine whether a claim for self-funded benefits should be paid or denied (and who also served as the sponsor's chief financial officer) expressly acknowledged the debt and recommended to the sponsor's chief executive officer that it should be paid; and (2) resolution of either claim requires no interpretation of the plan terms nor is it in any way dependant upon the plan being governed by ERISA. Accordingly, we affirm the judgment below.

*AFFIRMED*